**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

SUSAN VARA,
                Plaintiff,

                                      Case Number:  04-CV-73070-DT

v.

                                      JUDGE PAUL D. BORMAN

AMERICAN RED CROSS                      UNITED STATES DISTRICT COURT
Great Lakes Blood Region Center,
                Defendant.
_____ /

**OPINION AND ORDER: 1) GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT ON ALL OF PLAINTIFF'S CLAIMS; AND
2) DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE AFFIDAVIT IN
SUPPORT OF RESPONSE TO DEFENDANT'S MOTION**

Now before the Court is Defendant's motion for summary judgment, filed on March 21, 2005. Also before the Court is Plaintiff's belated Motion for Leave to File Affidavit in Support of Response to Defendant's Motion for Summary Judgment, filed on June 30, 2005, the day of the hearing.

The Court heard oral argument on June 30, 2005. Having considered the entire record, and for the reasons that follow, the Court GRANTS Defendant's motion for summary judgment on all of Plaintiff's claims, and DENIES Plaintiff's motion for leave to file a post-argument affidavit.

## I. BACKGROUND

Susan Vara ("Plaintiff"), a female Caucasian, worked as a Donor Technician, one who draws the blood of volunteer donors, for the American Red Cross ("Defendant"). (Br. at 1; Pl.'s Dep. at 41.) To maintain a proper history of all blood donations, Plaintiff's job description requires accurate record keeping and labeling of blood bags. (Br. at 1; *see* Pl.'s Dep. at 17-19.)

On August 9, 2002, some blood bags were mislabeled, and Defendant believed that Plaintiff was responsible for the mislabeling. (Pl.'s Dep. at 5, 27, 39-40; Br. at 1.) According to Plaintiff, she was not involved in the mislabeling incident. (Pl.'s Dep. at 5, 39.) At a meeting on August 12, 2002, about the mislabeling incident, Linda Overland ("Overland"), a supervisor, instructed Plaintiff that, until further notice, she was not to label blood bags ("the job restriction"). (*Id.* at 8, 11, 27, 42.) Plaintiff agreed not to do so. (*Id.* at 11.) A document purporting to bear Plaintiff's signature, dated August 12, 2002, acknowledges this job restriction.[1] (Ex. C.) Plaintiff later received a written warning, dated August 16, 2002, for the mislabeling incident.[2] (Pl.'s Dep. at 6, 27; Ex. B.)

Documents indicate, via Plaintiff's employee identification number, that Plaintiff, on August 14th and 15th of 2002, labeled blood bags. (Exs. F & G; Pl.'s Dep. at 27, 30.) Terry McDonald, a supervisor, averred that he saw Plaintiff label at least one blood bag on August 14, 2002. (McDonald Aff., Ex. H; Pl.'s Dep. at 29.)

On August 28, 2002, Plaintiff, pursuant to a verbal directive, was suspended with pay for labeling blood bags in violation of her job restriction. (Pl.'s Dep. at 19; Ex. E.) Although Plaintiff admitted that the job restriction had not been lifted, she denied violating that restriction. (Pl.'s Dep. at 27, 30.) Specifically, Plaintiff testified that, following the restriction, she did not label any blood bags, and that she did not sign or initial any documents purporting to indicate

---

[1] Despite her signature being on the document, Plaintiff does not recall having signed it. (Pl.'s Dep. at 11.) Overland averred that Plaintiff signed the document in Overland's presence. (Overland Aff., Ex. D.) In any event, Plaintiff does not dispute the existence of her job restriction.

[2] Plaintiff signed that written warning on August 20, 2002. (Ex. B.)

2

otherwise. (*Id.* at 30, 32.) The paid suspension was memorialized in writing on August 30, 2002. (*Id.* at 19; Ex. E.)

On September 10, 2002, Defendant terminated Plaintiff. During the termination meeting, Plaintiff's union represented her. (Pl.'s Dep. at 21.) On October 21, 2002, the union filed a grievance on Plaintiff's behalf. (Pl.'s Dep. Ex. 4; Ex. I). Defendant denied the grievance. (Pl.'s Dep. Ex. 5; Ex. J) The union did not appeal the denial of that grievance to arbitration. (*Id.*)

On May 6, 2004, Plaintiff filed suit against Defendant in Genesee County, Michigan, Circuit Court. (Br. at 1.) Counts I and II of the complaint allege claims of race and gender discrimination in violation of Michigan's Elliott-Larsen Civil Rights Act ("the ELCRA"), M.C.L. 37.2101, *et seq.*, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), *et seq.*, respectively.[3] (Compl. at ¶¶ 15-16.) Count III alleges a claim of wrongful discharge in violation of Michigan law. (*Id.* at ¶¶ 27-31.) On August 11, 2004, Defendant timely removed the action to this Court.

On March 21, 2005, Defendant filed the instant motion for summary judgment on all of Plaintiff's claims against it. As to Plaintiff's discrimination claims, Defendant contends that Plaintiff, as a matter of law, has failed to establish that she was treated differently than similarly-situated employees outside of her protected classes. (Br. at 1.) Alternatively, Defendant asserts

---

[3]Count I, in its caption, purports to assert a claim of unlawful retaliation under the ELCRA. (Compl. at 3.) At oral argument, Plaintiff represented that Count I does, in fact, assert such a claim.

Yet, as Defendant aptly argues, the record, as a matter of law, fails to establish–and the complaint does not even allege–that Plaintiff engaged in the requisite protected activity triggering such retaliation. (Br. at 1, 6.) *See* M.C.L.A. 37.2701(a); *Meyer v. City of Center Line*, 242 Mich. App. 560, 569 (Mich. Ct. App. 2000). Plaintiff has not responded to this contention. The Court concludes that Plaintiff's claim of unlawful retaliation under the ELCRA fails as a matter of law.

that Plaintiff, as a matter of law, has failed to show that Defendant's proffered legitimate reason for terminating Plaintiff was a pretext for unlawful discrimination. (*Id.*)  As to Plaintiff's wrongful-discharge claim, Defendant maintains that Plaintiff's failure to allege that her union breached its duty of fair representation bars such a claim as a matter of law. (*Id.*)

## II.  ANALYSIS

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  A "material" fact is one "that might affect the outcome of the suit under the governing law[.]" *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).  A "genuine" issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*  The Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.  In deciding a motion for summary judgment, the Court must draw all justifiable inferences from the evidence in the non-moving party's favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  However, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586.

### A.  Discrimination Claims

In analyzing claims of unlawful discrimination under Title VII or the ELCRA based upon indirect evidence, as here, the Court must apply the following three-step *McDonnell-Douglas* framework. *Hollins v. Atlantic Co., Inc.,* 188 F.3d 652, 658 (6th Cir. 1999); *Siecinski v. Blue Cross & Blue Shield of Mich.,* 469 Mich. 124, 133-34 (2003).  First, the plaintiff must establish a

*prima facie* case of unlawful discrimination. *Hollins,* 188 F.3d at 658. To establish a *prima facie* case of gender discrimination, a plaintiff must prove by a preponderance of the evidence that: 1) she is a member of a protected class; 2) the employer subjected her to an adverse employment action; 3) she was qualified for the position lost; and 4) the employer treated her less favorably than similarly-situated individuals outside of the protected class. *Gray v. Toshiba Am. Consumer Prods., Inc.,* 263 F.3d 595, 598 (6th Cir. 2001). Consistent with the Supreme Court's admonition that the traditional *McDonnell-Douglas* standard "be modified to accommodate different employment discrimination contexts," this Circuit has adopted the following inferential-evidence test for cases involving claims of "reverse discrimination," as here. *Pierce v. Commonwealth Life Ins. Co.,* 40 F.3d 796, 801 (6th Cir. 1994). To establish a *prima facie* case of reverse race discrimination, the plaintiff must show: 1) the existence of "background circumstances support[ing] the suspicion that the defendant is that unusual employer [or individual] who discriminates against the majority"; and 2) that the defendant treated differently individuals who were similarly situated but not members of the protected class. *See id.*

Once the plaintiff establishes a *prima facie* case of unlawful discrimination, a presumption of such unlawful discrimination arises, and the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. *See Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 254-55 (1981). If the defendant meets this burden, then the presumption of unlawful discrimination disappears, and the plaintiff must then demonstrate by a preponderance of the evidence that the proffered reason was a mere pretext for unlawful discrimination by establishing that the proffered reason: 1) has

no basis in fact; 2) did not actually motivate the adverse action; or 3) was insufficient to motivate the adverse action. *See Manzer v. Diamond Shamrock Chems. Co.,* 29 F.3d 1078, 1084 (6th Cir. 1994). If the plaintiff demonstrates that the defendant's proffered, legitimate reason is a pretext for unlawful discrimination, then the fact finder *may* infer unlawful discrimination. *See Kline v. Tenn. Valley Auth.,* 128 F.3d 337, 344 (6th Cir. 1998). Throughout the entire *McDonnell-Douglas* framework, the plaintiff bears the "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff." *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 507 (1993).

### 1. Gender Discrimination

Defendant contends that Plaintiff, as a matter of law, has failed to demonstrate that she was treated differently than similarly-situated employees outside of her gender for purposes of establishing a *prima facie* case of gender discrimination. (Br. at 1.) To be similarly-situated to the plaintiff, the employees with whom the plaintiff compares herself must be "nearly identical" to the plaintiff in all of the relevant aspects of employment, *Pierce,* 40 F.3d at 802, "without such differentiating or mitigating circumstances that would distinguish" them or the employer's treatment of them, *Mitchell v. Toldeo Hosp.,* 964 F.2d 577, 583 (6th Cir. 1992). *See also Town v. Michigan Bell Tele. Co.,* 455 Mich. 668, 699-700 (1997). In comparing employment decisions regarding discipline, "'precise equivalence in culpability between employees' is not required. Rather, the plaintiff must simply show that the employees were engaged in misconduct of 'comparable seriousness.'" *Hollins,* 188 F.3d at 659 (quoting *Harrison v. Metropolitan Gov't of Nashville and Davidson County,* 80 F.3d 1107, 1115 (6th Cir. 1996)).

As to the alleged gender discrimination, Plaintiff testified that she thought that Dalton

6

Minton ("Minton"), a Caucasian male, should have been equally investigated and disciplined for the August 9, 2002, mislabeling. (Pl.'s Dep. at 38-41.) According to Plaintiff, Defendant never restricted Minton from labeling blood bags. (*Id.* at 39.) Plaintiff's written warning for the August 9, 2002, mislabeling advised Plaintiff of her restriction from labeling blood, and that the next labeling violation would result in "immediate termination." (Ex. B.) Defendant issued Minton a verbal warning, memorialized in a document dated August 16, 2002, for the August 9, 2002, mislabeling. (Ex. K.) The warning advised Minton that any future mislabeling would result in "suspension up to discharge." (*Id.*) However, unlike Minton's warning, Plaintiff's warning cited "three other WBN labeling errors." (Exs. B, K.) Thus, although Defendant never restricted Minton from labeling blood bags following the August 9, 2002, mislabeling incident, Plaintiff has failed to demonstrate that Minton was similarly situated to Plaintiff for purposes of progressive discipline.

   As to the only other basis for the alleged gender discrimination, Plaintiff simply testified:

> We have to have a certain amount of . . . men working at the American Red Cross. That may or may not be . . . . Any employment . . . needs a certain amount of male[s] and females, so I'm just guessing at this, it might have been something similar to that. I don't know.

(Pl.'s Dep. at 40.) Such speculative testimony, however, is insufficient to defeat Defendant's motion for summary judgment.

   Plaintiff, as a matter of law, has failed to demonstrate that Defendant treated her less favorably than a similarly-situated male employee. Thus, Plaintiff has failed to establish a *prima facie* case of gender discrimination.

   Defendant asserts that, even if Plaintiff were to have shown such a *prima facie* case, she, as a matter of law, has failed to establish that Defendant's proffered legitimate reason for

7

terminating her was a pretext for gender discrimination. (Br. at 1.) Defendant maintains that it discharged Plaintiff for allegedly engaging in a regulated function–i.e. the labeling of blood bags–in violation of her job restriction. (*Id.* at 5.) As Defendant underscores, it did not discharge Plaintiff for her alleged involvement in the August 9, 2002, mislabeling incident. (*Id.* at 4.) Defendant has proffered two documents indicating, via Plaintiff's employee identification number and initials, that Plaintiff, on August 14th and 15th of 2002, labeled blood bags. (Exs. F & G; Pl.'s Dep. at 27, 30.) Moreover, Terry McDonald, a supervisor, averred that he saw Plaintiff handle at least one blood bag on August 14, 2002. (McDonald Aff., Ex. H; Pl.'s Dep. at 29.)

Plaintiff, in response, simply argues that genuine issues of material fact as to the reasons underlying Plaintiff's discharge exist. (Resp. at 1.) Plaintiff's response stated *in toto*:

> There are genuine issues of material fact as to why Plaintiff was discharged from here [sic] employment, Plaintiff prevailed at her unemployment compensation hearing, the hearing examiner determined that the employer, Defendant, Red Cross, failed to produce any evidence to substantiate that claimant was discharged for a disqualifying reason under the act, and that there had been mere allegations of wrongdoing unsupported by evidence, and there were no witnesses to the alleged misconduct. Defendant is not entitled to judgment as a matter of law.

(Resp. at 1-2.) Thus, Plaintiff's Brief, without any discussion of the facts before the Court on the instant motion, and without citing to evidentiary or legal support, relies completely on the finding of the unemployment hearing. That hearing's conclusion is not binding on this Court.

Plaintiff appears to contend that Defendant's proffered legitimate reason has no basis in fact.[4] *See Manzer,* 29 F.3d at 1084. Indeed, Plaintiff testified, in her deposition, that she was not

---

[4]Plaintiff, as a matter of law, does not demonstrate that Defendant's proffered reason for terminating her was insufficient to motivate that termination. This showing usually "consists of evidence that other employees, particularly employees not in the protected class, were not fired

involved in the August 9, 2002, mislabeling incident; that, after her job restriction, she did not label any blood bags; and that she did not sign or initial any documents purporting to indicate otherwise.  (Pl.'s Dep. at 5, 27, 30, 32, 39.)  However, because Plaintiff has failed to establish a *prima facie* case of gender discrimination, the case does not proceed to the rebuttal stage.  *See Burdine,* 450 U.S. at 254-55 (holding that a presumption of unlawful discrimination arises and the burden of producing a non-discriminatory reason for the adverse action shifts to the defendant only after the plaintiff has established a *prima facie* case of such discrimination); *Hicks,* 509 U.S. at 511 (holding that "[t]he fact finder's disbelief of the reasons put forward by the defendant . . . together with the elements of the prima facie case . . . suffice to show intentional discrimination"); *Cline v. Catholic Diocese of Toledo,* 206 F.3d 651, 666 (6th Cir. 2000) (considering the "rebuttal phase" only after finding that the plaintiff demonstrate a *prima facie* case of discrimination).  Plaintiff's claim of gender discrimination fails as a matter of law.

### 2.  Race Discrimination

Defendant contends that Plaintiff, as a matter of law, has failed to demonstrate that she was treated differently than similarly-situated employees outside of her race and, thus, has failed

---

even though they engaged in substantially identical conduct to that which the employer contends motivated" the plaintiff's discharge. *Manzer,* 29 F.3d at 1084.  As Defendant aptly notes, Plaintiff has failed to show that Defendant treated male employees who disobeyed a direct order not to perform a regulated function more favorably than Plaintiff. (Br. at 5-6.)  Indeed, Sharon Jaksa averred that no employee other than Plaintiff has performed a regulated function after having been restricted from doing so.  (Jaksa Aff., Ex. L)

Plaintiff, as a matter of law, cannot demonstrate that gender discrimination, rather than Defendant's proffered reason for discharging her, actually motivated that discharge.  This showing usually consists of enough circumstantial evidence of discrimination that it is "more likely than not" that the employer's explanation is a pretext for such discrimination.  *Manzer,* 29 F.3d at 1084.  Plaintiff, as a matter of law, has failed to proffer sufficient circumstantial evidence of gender discrimination to establish a *prima facie* case, let alone the requisite additional circumstantial evidence of such discrimination to demonstrate pretext.  *See id.*

9

to establish a *prima facie* case of reverse race discrimination. (Br. at 1.) Plaintiff testified that her only basis for believing that she was racially discriminated against was her belief that Defendant "possibly had to keep, like I said, the criteria–the employees on a certain level being . . . black and white, yes." (Pl.'s Dep. at 41-42.) Such speculative testimony is insufficient to defeat Defendant's motion for summary judgment.

Upon being questioned by her counsel, Plaintiff subsequently testified to three African-American Donor Technicians who allegedly committed mislabeling errors while performing their jobs and whom Defendant never terminated for such errors. (Pl.'s Dep. at 44-46.) Plaintiff testified that she did not "know of" Defendant having disciplined them for such errors. (*Id.* at 45.) Plaintiff later clarified:

> Disciplined as far as be it wrote up to remind them not to do that, you would have to see a file, but nothing that they had three days off or was taken off work for it at all, or removed completely from the job portion of it, no.

(*Id.* at 47.) Yet, as noted above, Plaintiff's written warning for the August 9, 2002, mislabeling stated that she had "been involved in three other WBN labeling errors." (Ex. B.) Although Plaintiff testified that the three African-American Donor Technicians made mislabeling errors, there is no record evidence indicating how many such errors each of them made. Thus, Plaintiff has failed to demonstrate that the African-American employees were similarly situated to her for purposes of progressive discipline.

Plaintiff testified that, if an employee were to have mislabeled blood bags consistently, she would be "taken out and put into training and retrained again." (Pl.'s Dep. at 46.) Plaintiff testified that she was "not aware" of the three African-American Donor Technicians having been retrained. (*Id.* at 47.) However, a document entitled Request for Retraining, which Plaintiff

10

signed on August 12, 2002, indicates that Overland did not recommend that Plaintiff receive labeling retraining because Plaintiff knew "how to perform [labeling] properly."  (Ex. C.)

Plaintiff, as a matter of law, has failed to demonstrate that Defendant treated her less favorably than similarly-situated employees outside of her race.  Moreover, Plaintiff, as a matter of law, has also failed to show the requisite "background circumstances support[ing] the suspicion that the defendant is that unusual employer [or individual] who discriminates against the majority."  *Pierce,* 40 F.3d at 801.  Defendant, however, does not raise this issue.  Plaintiff, in any event, has failed to establish a *prima facie* case of reverse race discrimination.

Defendant asserts that, even if she were to have shown such a *prima facie* case, Plaintiff, as a matter of law, has failed to establish that Defendant's proffered legitimate reason for terminating Plaintiff–her labeling of blood bags in violation of her work restriction–was a pretext for race discrimination.  (Br. at 1, 5.)  Plaintiff, in essence, asserts that Defendant's proffered legitimate reason has no basis in fact.[5]  Indeed, Plaintiff, in her deposition, testified that she was not involved in the August 9, 2002, mislabeling incident; that, after her job restriction, she did not label any blood bags; and that she did not sign or initial any documents purporting to indicate otherwise.  (Pl.'s Dep. at 5, 27, 30, 32, 39.)  Yet, because Plaintiff has failed to establish a *prima facie* case of reverse race discrimination, the case cannot proceed to the rebuttal stage.  *See*

---

[5]As noted above, Plaintiff, as a matter of law, cannot demonstrate that Defendant's proffered reason for terminating her was insufficient to motivate that termination.  There is no evidence in the record to rebut Sharon Jaksa's averment that no employee other than Plaintiff has performed a regulated function after having been restricted from doing so.  (Jaksa Aff., Ex. L)

Having failed, as a matter of law, to proffer sufficient circumstantial evidence of reverse race discrimination to establish a *prima facie* case, Plaintiff, as a matter of law, cannot demonstrate that such discrimination, rather than Defendant's proffered reason for discharging her, actually motivated that discharge.  *See Manzer,* 29 F.3d at 1084.

11

*Burdine,* 450 U.S. at 254-55; *Hicks,* 509 U.S. at 511; *Cline,* 206 F.3d at 666.  Plaintiff's claim of reverse race discrimination fails as a matter of law.

### 3.  Plaintiff's Motion for Leave to File Her Affidavit

On June 30, 2005, during oral argument, Plaintiff sought to file her affidavit after argument in support of her response to Defendant's summary-judgment motion.  Plaintiff's affidavit addresses whether she did, in fact, label blood bags in violation of her work restriction, a matter addressed in her deposition.  The Court denies Plaintiff's motion for leave to file her affidavit as both untimely and futile because that matter had been explored in her deposition.

### B.  Wrongful-Discharge Claim

The Labor Management Relations Act of 1947 ("LMRA") or § 301(a), 29 U.S.C. § 141 *et seq.*, governs the interpretation of collective bargaining agreements.  Section 301, which provides a federal cause of action for a breach of a collective bargaining agreement, states in part:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).  "[S]ection 301 not only confers federal jurisdiction over controversies involving collective bargaining agreements, but also authorizes the federal courts to fashion a body of federal law for the enforcement of section 301."  *Terwilliger v. Greyhound Lines, Inc.,* 882 F.2d 1033, 1036 (6th Cir. 1989).  Moreover, to develop a uniform body of national labor law and "to avoid conflicts in the interpretation of collective bargaining agreements," the federal law governing § 301 preempts state law.  *Id.*  Pursuant to this preemption doctrine, § 301 governs

12

claims that directly rely upon rights that arise from collective bargaining agreements and claims that substantially hinge upon the analysis or interpretation of collective bargaining agreements. *Id.*

Although "an individual employee may bring suit against his employer for breach of a collective bargaining agreement," the employee is ordinarily "required to attempt to exhaust any grievance or arbitration remedies [that are] provided in the collective bargaining agreement." *DelCostello v. Int'l Brotherhood of Teamsters,* 462 U.S. 151, 163 (1983). "Subject to very limited judicial review, he will be bound by the result according to the finality provisions of the agreement." *Id.* at 164. However, where "the union representing the employee in the grievance/arbitration procedure acts in such a discriminatory, dishonest, arbitrary, or perfunctory fashion as to breach its duty of fair representation," the employee's suit against the employer for breach of the collective bargaining agreement may lie regardless of the outcome or finality of the grievance/arbitration procedure as long as the employee proves that the union breached its duty of fair representation. *See id.* at 164-65.

As to her wrongful-discharge claim, Plaintiff asserts that she was terminated from her employment without just cause. Article 11, Section 1, of the collective bargaining agreement to which Plaintiff was subject provides that "[n]o seniority employee shall be discharged, demoted, or otherwise disciplined without just cause." (Ex. L at 9.) Article 1 of the collective bargaining agreement recognizes a particular union as the sole and exclusive bargaining representative of certain employees, including Plaintiff. (*Id.* at 1.) Article 7, Section 3, of the collective bargaining agreement sets forth the requisite procedure for pursuing employee grievances, which procedure includes final and binding arbitration. (*Id.* at 5-6.)

Relying solely upon this Court's opinion in *Smith v. Fritz Simmons Manufacturing Co.,* No. 99-CV-70954, 2000 WL 367880 (E.D. Mich. Jan. 31, 2000) (unpublished opinion), Defendant maintains that Plaintiff's failure to allege that her union breached its duty of fair representation bars her wrongful-discharge claim as a matter of law. (Br. at 1.)  In *Fritz Simmons,* the Court held that § 301 of the LMRA preempts an employee's claim of wrongful discharge against her employer because "[s]uch a claim necessarily is a claim that the employer violated the collective bargaining agreement." *Id.* at * 3.  The Court further held that, although an employee represented by a union and subject to a collective bargaining agreement may bring a claim against her employer for a violation of that agreement, the employee, to survive dismissal, must also bring a claim against her union for a breach of its duty of fair representation. 2000 WL 367880 at * 4 (citing *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 570-71 (1976), and *Ryan v. General Motors Corp.,* 929 F.2d 1105, 1109 (6th Cir. 1989)).

In this case, although the union filed a wrongful-discharge grievance on Plaintiff's behalf, the union did not appeal Defendant's denial of that grievance to arbitration.  (Exs. I, J; Pl.'s Dep. at 25.)  As Defendant points out, Plaintiff has neither plead nor proved that her union breached its duty of fair representation.  (Br. at 7.)

Following the Court's holding in *Fritz Simmons,* the LMRA preempts Plaintiff's wrongful-discharge claim because such a claim necessarily alleges that Defendant violated the collective bargaining agreement by terminating Plaintiff without just cause.  *See* 2000 WL 367880 at * 3.  Moreover, such preemption under the LMRA is complete and, thus, transforms Plaintiff's wrongful-discharge claim into one arising under federal law in the first instance.  *See Rivet v. Regions Bank of Louisiana,* 522 U.S. 470, 476 (1988) (holding that, under the complete-

14

preemption doctrine, even though a complaint, on its face, sets forth a claim under state law, that claim, nevertheless, arises under federal law when Congress intended federal law completely to preempt any such state-law claim); *Avco Corp. v. Aero Lodge No. 735,* 390 U.S. 557 (1968) (finding it well-settled that Congress intended the LMRA to have such complete preemptive force). The record demonstrates–and Plaintiff does not dispute–that her wrongful-discharge grievance, after being denied by Defendant, was never arbitrated. Moreover, Plaintiff has neither plead nor proved that her union breached its duty of fair representation.[6] Thus, Plaintiff's wrongful-discharge claim fails as a matter of law. Indeed, Plaintiff conceded this point at oral argument.

### III. SUMMARY

For the preceding reasons, the Court:

1) GRANTS Defendant's motion for summary judgment on Plaintiff's discrimination claims because Plaintiff, as a matter of law, has failed to establish *prima facie* cases of gender and reverse race discrimination;

2) GRANTS Defendant's motion for summary judgment on Plaintiff's wrongful-discharge claim because Plaintiff, as a matter of law, has failed to plead or to prove that her union breached its duty of fair representation; and

3) DENIES Plaintiff's Motion for Leave to File Affidavit in Support of Response to Defendant's Motion for Summary Judgment as untimely and futile.

SO ORDERED.

---

[6]Plaintiff testified that the union told her to quit her job, and, when she asked about appealing the grievance to arbitration, the union told her that "the rules were changed and there would be no arbitration." (Pl.'s Dep. at 25.) However, neither Plaintiff's complaint nor her response alleges that the union breached its duty of fair representation.

        s/Paul D. Borman  
        PAUL D. BORMAN  
        UNITED STATES DISTRICT JUDGE

Dated:  July 21, 2005

## CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on July 21, 2005.

        s/Jonie Parker  
        Case Manager